IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

CHRISTOPHER HALLIDAY                          :
1010 Main Street
Gaithersburg, Maryland 20878                  :

     *Plaintiff,*                               :        JURY TRIAL DEMANDED

vs.                                           :        Case No.: V334739

BANK OF AMERICA, NA                           :
100 North Tryon Street
Charlotte, North Carolina 28255               :

     Serve:                                    :
     The Corporation Trust, Inc.
     351 West Camden Street                    :
     Baltimore, Maryland 21201

                             :

And                                           :

BAC HOME LOANS SERVICING, LP                  :
6400 Legacy Drive
Plano, Texas 75024                            :

                             :

     Serve:
     The Corporation Trust, Inc.               :
     351 West Camden Street
     Baltimore, Maryland 21201                 :

     *Defendants.*

### VERIFIED COMPLAINT

TO THE HONORABE JUDGES OF SAID COURT:

COMES NOW, Plaintiff, CHRISTOPHER HALLIDAY, (hereinafter, "Plaintiff"), by and

through undersigned counsel, Spencer M. Hecht, Jennifer M. Valinski, and the law office of

Hecht & Associates, LLC, and hereby files suit for damages against Defendant BANK OF

AMERICA, NA (hereinafter, "Bank of America") and Defendant BAC HOME LOAN

1


RECEIVED

JUN 29 2010

Clerk of the Circuit Court
Montgomery County, Md.

SERVICING, LP (hereinafter "BAC"). In support of the causes of action herein, Plaintiff avers the following:

The Parties

1. Plaintiff is an adult citizen and resident of Montgomery County, Maryland.

2. Defendant Bank of America is a corporation with its principal place of business in North Carolina. Defendant Bank of America is in the business of, among other things, banking, loans, and home mortgages and is licensed and authorized to transact business in Maryland.

3. Defendant BAC is a corporation with its principal place of business in Texas. Defendant BAC is in the business of, among other things, banking and home mortgages and is a subsidiary of Defendant Bank of America. Defendant BAC reviews and services home loan modification applications and loans on behalf of Defendant Bank of America and is licensed and authorized to transact business in Maryland.

Jurisdiction and Venue

4. This Honorable Court may exercise subject-matter jurisdiction over this action pursuant to Md. Ann. Code, Courts and Judicial Proceedings, § 4-401, as the amount in controversy exceeds Thirty Thousand Dollars ($30,000.00), exclusive of interest, costs, and attorney's fees. Additionally, this Honorable Court may exercise subject-matter jurisdiction pursuant to Md. Ann. Code, Courts and Judicial Proceedings, § 1-501, as the court is an equity court of record and pursuant to Courts and Judicial Proceedings, § 3-403 of the Maryland Uniform Declaratory Judgments Act.

5. This Honorable Court may exercise personal jurisdiction over Defendants pursuant to Md. Ann. Code, Courts and Judicial Proceedings, § 6-103, as they regularly transact business in the State of Maryland.

6. Venue is appropriate pursuant to Md. Ann. Code, Courts and Judicial Proceedings, § 6-201, as Defendants regularly carry on a business in the State of Maryland.

<u>Facts Common to All Counts</u>

7. On or about July 18, 2006, Plaintiff and Defendants entered into a home mortgage agreement for the property known as 1010 Main Street, Gaithersburg, Maryland 20878 with loan number 141277930. Pursuant to the mortgage agreement, Plaintiff's monthly mortgage payment was $3,631.89.

8. By the summer of 2009, Plaintiff was having difficulty in making the entire monthly mortgage payment of $3,631.89 and was behind in his payments. Accordingly, Plaintiff requested and applied for a home loan modification with Defendants.

9. On or about August 29, 2009, Defendants presented a written offer to Plaintiff to modify his home mortgage. The offer letter stated that Plaintiff was "eligible" for a "possible 5 year interest rate freeze and/or reduction" with "interest only payments for a ten (10) year period." The offer further stated that, "[i]n order to take advantage of the options above, you must agree to the enclosed modification agreement and return it to us as indicated below." A copy of the August 29, 2009 letter is attached hereto and incorporated herein as **Exhibit 1.**

10. Specifically, Defendants made the following offer to modify Plaintiff's home mortgage:

> The enclosed modification agreement fixes your interest rate at 2.375%, and results in a new monthly payment amount of $1,551.50 (this payment is subject to change if your escrow payment changes.) This rate will take effect on 1st day of October 2009 and will be fixed for a period of five years (September 30, 2014). At the end of that period and each year after, your interest rate may increase.
>
> . . .
>
> IMPORTANT TERMS

. . . After the ten-year period, you will be required to make principal and interest payments for the remaining term of the loan. <u>This modification will eliminate the negative amortization feature of your loan.</u> . . . By signing and returning the documents to us you are acknowledging your acceptance and understanding of the terms of the modification.

. . .

The following figures show your delinquent balance as of August 29, 2009. The total amount and breakdown of delinquent amounts that would be added to your loan under the terms of the enclosed modification are as follows:

Interest: $16,274.75
Fees: $0.00
Escrow: $7,830.86
Total: $24,105.61

. . .

See, Exhibit 1.

11.  In order to accept the proposed loan modification from Defendants, and pursuant to the August 29, 2010 offer letter, Plaintiff was required to do the following:

TO ACCEPT THE ENCLOSED MODIFICATION, HERE'S WHAT YOU NEED TO DO:

1.  Carefully review all documentation enclosed. We have outlined important legal terms and notices of this change on the following pages. It is very important that you have read and understand these terms.

2.  Sign and date the enclosed modification document in the presence of a notary.[1] The notary acknowledgment must be in recordable form. All parties who own an interest in the property must sign the modification agreement as their name appears on the enclosed agreement.

3.  Return the signed documents to us in the pre-paid FedEx envelope no later than September 28, 2009 in order for the enclosed modification to take effect. Be sure to use the address label provided.

See, Exhibit 1.

---

[1] The letter included a footnote regarding instructions if the document was to be executed in California.

4

12. After reviewing all of the documentation provided by Defendants, Plaintiff accepted the offer and signed the Loan Modification Agreement (hereinafter "Agreement") in front of a Notary on September 9, 2009. See the attached Loan Modification Agreement, attached hereto and incorporated herein as **Exhibit 2.** Pursuant to the August 29, 2009 letter, Plaintiff mailed the executed agreement to Defendants in the pre-paid Federal Express envelope provided, along with the address label.

13. The Agreement stated that it "amends and supplements (1) the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument," dated the 18th day of July 2006, and (2) the Note and Adjustable Rate Rider secured by the Security Instrument, and (3) any prior agreements or modifications in effect relative to the Note and Security Instrument which covers the real property described in the Security Instrument and defined therein as the "Property," located at 1010 Main Street, Gaithersburg, MD 20878." See, **Exhibit 2.**

14. On or about October 30, 2009, Plaintiff made the first modified monthly payment of $1,551.50 to Defendants.

15. Shortly after Plaintiff made the first modified monthly payment, Defendants sent to Plaintiff payment coupons in the amount of $3,631.89, the same amount as the original monthly mortgage payment.

16. After receiving the erroneous payment coupon, Plaintiff immediately contacted Defendants and informed them that he had accepted the interest only payments Agreement and mailed it to them. Defendants' customer service department informed Plaintiff that it had in fact receive the executed Agreement, but that it "would take some time for it to be entered into their computer system." Defendants' customer service department also informed Plaintiff that it would continue to accept his monthly payment of $1,551.50.

17. Defendants' statements and actions expressly and impliedly ratified the parties' Agreement.

18. Plaintiff continued to make payments in the amount of $1,551.50.

19. For several months, Defendants continued to send Plaintiff payment coupons for $3,631.89. Each month, Plaintiff made multiple telephone calls to Defendants' customer service department in an attempt to resolve the admitted discrepancy. Each and every time he called, Plaintiff was informed that Defendants had received the Agreement, and that the Agreement was "accepted," but that it was taking additional time for the Agreement to be "entered into the system." Defendants also informed Plaintiff to "not worry" about the problem and to continue to make the $1,551.50 monthly payment. Plaintiff continued to rely upon Defendants' representations and continued to make payment of $1,551.50 on a monthly basis.

20. Sometime in February/March 2010, and after multiple monthly telephone discussions with the Plaintiff informing him that it had in fact received and accepted the Agreement, Defendants informed Plaintiff that it now did not have the Agreement, and did not agree to modify his loan pursuant to the terms and conditions of the Agreement.

21. Plaintiff then hired his former counsel, Matthew Abbasi to assist him in resolving the dispute with Defendants. On or about March 31, 2010[2], Mr. Abbasi sent a letter to Defendants, which attached the Agreement and detailed his efforts in contacting and speaking with Defendants' employees and representatives. A copy of the March 31, 2010 letter is attached hereto and incorporated herein as **Exhibit 3**.

22. Mr. Abbasi made numerous efforts to resolve the dispute with Defendants. On or about February 26, 2010, Mr. Abbasi spoke with Defendants' Assistant Supervisor Jenna Verner

---

[2] The letter was dated March 31, 2010, but was faxed on April 2, 2010. See Exhibit 3.

who informed him that she would contact him in 5-7 business days after the "research department" reviewed the matter. Ms. Verner never contacted Plaintiff's former counsel.

23. Several weeks later, Mr. Abbasi contacted Defendants' customer service department and spoke with customer service representative Jacinda. Jacinda informed Mr. Abbasi that the "research department" was unable to locate the Agreement and that Defendants did not have such an agreement with Plaintiff. The Agreement was promptly faxed to Defendants. Jacinda then informed Mr. Abbasi that Plaintiff's file would be re-opened and sent for a review for a loan modification offer. Mr. Abbasi stated that Plaintiff's case did not need to be sent for a review as the Agreement was already in place. He asked Defendants to research the matter and correct the internal issues regarding the error. Defendants never contacted Mr. Abbasi by phone or letter, nor corrected the internal issues regarding Plaintiff's loan modification, as was requested in his March 31, 2010 letter.

24. On or about April 23, 2010, Plaintiff received a letter from Defendants, which stated that his request for a loan modification under the federal government's Home Affordable Modification Program was denied. A copy of the April 23, 2010 letter is attached hereto and incorporated herein as Exhibit 4. Defendants went on to state that the hold on foreclosure proceedings would cease and foreclosure proceedings resume if Plaintiff did not contact Defendants by May 7, 2010.

25. Plaintiff subsequently retained undersigned counsel, who contacted Defendants on May 7, 2010. Undersigned counsel explained that Plaintiff and Defendants already had a binding home loan modification agreement, and that Defendants had failed to properly input the Agreement into its computer system. Defendants' Loan Modification Department customer

7

service representative Johanna informed Plaintiff's counsel that foreclosure proceedings had not begun and that it would continue to be put on hold during a review of the dispute.

26. On or about May 10, 2010, Plaintiff's counsel faxed a letter to Defendants, outlining the continued issues and problems posed by Defendants' refusal to acknowledge and input the Agreement into its computer system. Attached to the letter was a copy of the Agreement. A copy of the May 10, 2010 letter is attached hereto and incorporated herein as **Exhibit 5**.

27. On or about May 11, 2010, undersigned counsel contacted Defendants and was informed by Loan Modification Department customer service representative Cora that as soon as the letter was received and confirmed, the foreclosure holding period would be extended. Defendants did not contact undersigned counsel regarding the May 10, 2010 correspondence.

28. On or about May 17, 2010, Plaintiff's counsel contacted Defendants and spoke with Loan Modification Department customer service representative Shawna. She informed Plaintiff's counsel that an e-mail would be sent to the Management Department putting it on notice of the Agreement and that the Agreement had not been processed in the computer system. She went on to state that the Management Department would then speak with the Closing Department to finalize the Agreement. Shawna also stated that it appeared to be a "human error" as to why the Agreement was not processed into the system.

29. On or about May 24, 2010, undersigned contacted Defendants and spoke with Loan Modification Department customer service representative Nancy who stated that the Management Department did not respond to Shawna's e-mail. Nancy informed Plaintiff's counsel that she would send an e-mail to Shawna asking for new developments and questioned why the Agreement was not properly "closed." Undersigned counsel was told to call back in a few days to follow up.

30. On or about May 28, 2010, undersigned counsel made two (2) phone calls to Defendants. The first call was with Loan Modification Department customer service representative Eileen, who stated that there were no new updates from the Management Department. After denying undersigned counsel's request to speak with someone in the Management Department, Eileen stated that she would send an e-mail to Management to have someone call undersigned counsel directly by a time certain.

31. After not hearing from Defendants' Management Department as promised, undersigned counsel made the second phone call and spoke with Loan Modification Department customer service representative Christine. Christine contacted the alleged vendor of the loan, the Bank of New York. Upon being informed that the Bank of New York had not received the "original" loan application, Christine stated that the Agreement was not valid and his original monthly mortgage amount of $3,631.89 was still in effect.

32. Plaintiff's counsel objected to this conclusion and stated that Plaintiff sent the original Agreement by mail pursuant to the terms and conditions of the August 29, 2009 offer letter, and that Defendants lost it within its system. Christine then stated that there was nothing more that could be done.

33. On or about June 10, 2010, Plaintiff's counsel sent a letter to Defendants' Legal Department, outlining the dispute and all efforts expended by Plaintiff to resolve this matter. A copy of the June 10, 2010 letter is attached hereto and incorporated herein as **Exhibit 6.** Defendants only responded that it had received the letter.

34. On or about June 16, 2010, Defendants sent a form letter to Plaintiff stating that it "recently" received his request for financial assistance, but there were "no available workout

options" based upon Plaintiff's financial information. A copy of the June 16, 2010 letter is attached hereto and incorporated herein as **Exhibit 7**.

35. In addition, on or about June 16, 2010, Defendants notified Plaintiff of their intent to accelerate Plaintiff's mortgage, stating that Plaintiff was in default of his loan in the amount of $33,110.51 and that he has the right to cure the default by paying in full the default amount, plus any additional regular monthly payment or payments, and late charges, on or before July 16, 2010. A copy of the Notice of Intent to Accelerate is attached hereto and incorporated herein as **Exhibit 8**. Defendants go on to state that if the default is not cured by said date, the mortgage payments would be accelerated with the full amount becoming due and payable and foreclosure proceedings would begin. See **Exhibit 8**.

36. Plaintiff is not in the financial position to cure the alleged default in full and is unable to do so by the deadline date of July 16, 2010.

37. As a direct and proximate result of Defendants' actions, Plaintiff's credit has been negatively and detrimentally affected, which has resulted in his inability to obtain and secure any type of loan or credit with any lending institution.

38. As a direct and proximate result of Defendants' actions, Plaintiff's property will be subject to foreclosure proceedings in July 2010, which can result in Plaintiff losing his home.

39. As a direct and proximate result of Defendants' actions, Plaintiff has incurred substantial damages, including but not limited to, an increase of $40,000.00 towards the principal owed on the original mortgage, costs, and attorney's fees.

40. As a direct and proximate result of Defendants' actions, Plaintiff has suffered from emotional distress, including but not limited to, severe anxiety and insomnia.

COUNT I – Breach of Contract

41.  Plaintiff adopts by reference the allegations contained in paragraphs one (1) through forty (40) of this Complaint as if fully set forth herein.

42.  On or about September 9, 2009, Plaintiff entered into an Agreement with Defendants for an interest only home loan modification of his existing mortgage.  Pursuant to the terms and conditions of the Agreement, Plaintiff's monthly mortgage payment was modified from $3,631.89 to $1,551.50 per month.

43.  Defendants failed to accept Plaintiff's modified monthly mortgage payments of $1,551.50 and to properly credit his account in accordance with the terms and conditions of the Agreement, after its acceptance and ratification.

44.  Defendants' failure to accept the modified monthly mortgage payments and credit Plaintiff's account constitutes a material breach of the contract.

45.  As a direct and proximate result of Defendants' material breach, Plaintiff has been damaged in the amount of $40,000.00, plus additional amounts to be determined at trial, including additional deficiencies, late payment fees, interest, costs, and attorney's fees.

WHEREFORE, for the foregoing reasons, Plaintiff Christopher Halliday, demands the following:

A.  Judgment against Defendant Bank of America, N.A., and Defendant BAC Home Loans Servicing, LP, jointly and severally, in the amount of $40,000.00, plus additional amounts to be determined at trial, including additional deficiencies, late payment fees, interest, costs, and attorney's fees;

B.  Such other and further relief as this Court deems fair and just.

## COUNT II – Detrimental Reliance

46. Plaintiff adopts by reference the allegations contained in paragraphs one (1) through forty-five (45) of this Complaint as if fully set forth herein.

47. On or about August 29, 2009, Defendants offered to Plaintiff a clear and definite promise to modify his home loan monthly mortgage payment from $3,631.89 per month to $1,551.50 per month.

48. Defendants had a reasonable expectation that its offer to modify Plaintiff's home loan mortgage would induce Plaintiff to act upon and accept that offer.

49. Plaintiff was induced to accept the offer and did so on or about September 9, 2009, when he executed the Agreement and mailed it to Defendants in the envelope and mailing label provided by Defendants.

50. As a direct and proximate result, Plaintiff relied upon Defendants' offer to his detriment which can only be avoided by the enforcement of the August 29, 2009 offer/promise.

WHEREFORE, for the foregoing reasons, Plaintiff Christopher Halliday, demands the following:

A. Judgment against Defendant Bank of America, N.A., and Defendant BAC Home Loans Servicing, LP, jointly and severally;

B. Defendant Bank of America, N.A., and Defendant BAC Home Loans Servicing, LP, be ordered to accept the Agreement;

C. Defendant Bank of America, N.A. and Defendant BAC Home Loans Servicing, LP, be ordered to properly credit Plaintiff's account pursuant to the terms and conditions thereof;

D. Judgment in an amount of $40,000.00, plus additional amounts to be determined at trial, including additional deficiencies, late payment fees, interest, costs, and attorney's fees.

<u>COUNT III – Specific Performance</u>

51. Plaintiff adopts by reference the allegations contained in paragraphs one (1) through fifty (50) of this Complaint as if fully set forth herein.

52. On or about September 9, 2009, Plaintiff entered into an Agreement with Defendants for an interest only home loan modification of his existing mortgage. Pursuant to the terms and conditions of the Agreement, Plaintiff's monthly mortgage payment was modified from $3,631.89 to $1,551.50 per month.

53. Defendants failed to accept Plaintiff's modified monthly mortgage payments of $1,551.50 and to properly credit his account in accordance with the terms and conditions of the Agreement, after its acceptance and ratification.

54. From November 2009 through June 2010, Plaintiff made demands upon Defendants to accept the modified monthly payment of $1,551.50 and to properly credit his account in accordance with the terms and conditions of the ratified Agreement. Defendants continually informed Plaintiff that the Agreement was received and accepted and that they would continue to accept the modified monthly payment of $1,551.50.

55. Undersigned counsel and Plaintiff's former counsel, Matthew Abbasi, also made demands upon Defendants to accept the modified monthly payment of $1,551.50 and to properly credit Plaintiff's account in accordance with the terms and conditions of the ratified Agreement. Defendants initially acknowledged the Agreement, but later denied its validity stating that it did not receive the "original" Agreement.

56. At all times relevant hereto, Plaintiff was ready, willing and able to perform under the terms and conditions of the ratified Agreement.

57. Notwithstanding Plaintiff's demands Defendants failed to perform and materially breached the Agreement.

58. Plaintiff has no adequate remedy at law.

WHEREFORE, for the foregoing reasons, Plaintiff Christopher Halliday, demands the following:

A. Judgment against Defendant Bank of America, N.A., and Defendant BAC Home Loans Servicing, LP, jointly and severally;

B. Defendant Bank of America, N.A., and Defendant BAC Home Loans Servicing, LP, be ordered to accept the Agreement;

C. Defendant Bank of America, N.A. and Defendant BAC Home Loans Servicing, LP, be ordered to properly credit Plaintiff's account pursuant to the terms and conditions thereof;

D. Restrain/enjoin Defendant Bank of America, N.A. and Defendant BAC Home Loans Servicing, LP from initiating or pursuing foreclosure proceedings against Plaintiff's property.

COUNT IV – Declaratory Judgment – Md. Code Ann., Courts and Judicial Proceedings, § 3-406

59. Plaintiff adopts by reference the allegations contained in paragraphs one (1) through fifty-eight (58) of this Complaint as if fully set forth herein.

60. An actual and justiciable controversy exists between Defendants and Plaintiff concerning the parties' respective rights and obligations under terms and conditions of the ratified Agreement.

61. Defendants now deny that they have any Agreement with Plaintiff, stating that they never received the "original" Agreement from Plaintiff and that accordingly the Agreement is not binding.

62. Plaintiff is therefore entitled to a declaration from this Honorable Court as to the validity and enforceability of the Agreement between the parties.

WHEREFORE, for the foregoing reasons, Plaintiff Christopher Halliday, demands this Honorable Court:

A. Order that the Agreement entered into by the parties is valid and enforceable;

B. Order a judgment against Defendant Bank of America and Defendant BAC Home Loans Servicing, LP, jointly and severally, in the amount of $40,000.00, plus additional amounts to be determined at trial, including additional deficiencies, late payment fees, interest, costs, and attorney's fees.

### COUNT V –Injunctive Relief-Maryland Rules 15-501 through 15-505

63. Plaintiff adopts by reference the allegations contained in paragraphs one (1) through sixty-two (62) of this Complaint as if fully set forth herein.

64. On or about September 9, 2009, Plaintiff entered into an Agreement with Defendants for an interest only home loan modification of his existing mortgage. Pursuant to the terms and conditions of the Agreement, Plaintiff's monthly mortgage payment was modified from $3,631.89 to $1,551.50 per month.

65. Defendants failed to accept Plaintiff's modified monthly mortgage payments of $1,551.50 and to properly credit his account in accordance with the terms and conditions of the Agreement, after its acceptance and ratification.

66. From November 2009 through June 2010, Plaintiff made demands upon Defendants to accept the modified monthly payment of $1,551.50 and to properly credit his account in accordance with the terms and conditions of the ratified Agreement. Defendants continually

informed Plaintiff that the Agreement was received and accepted and that they would continue to accept the modified monthly payment of $1,551.50.

67. Undersigned counsel and Plaintiff's former counsel, Matthew Abbasi, also made demands upon Defendants to accept the modified monthly payment of $1,551.50 and to properly credit Plaintiff's account in accordance with the terms and conditions of the ratified Agreement. Defendants initially acknowledged the Agreement, but later denied its validity stating that it did not receive the "original" Agreement.

68. On or about June 16, 2010 Defendants notified Plaintiff of their intent to accelerate Plaintiff's mortgage. See Exhibit 7. Defendants stated that Plaintiff has until July 16, 2010 in which to cure his alleged default by paying the default amount of $33,110.51 in full, plus any additional regular monthly payment(s) and late charges.

69. Defendants also stated that if the alleged default is not cured by July 16, 2010, they would institute foreclosure proceedings against Plaintiff's property.

70. Plaintiff is not in a financial position in which to cure the alleged default in full by the deadline date of July 16, 2010.

71. Defendants' conduct constitutes a material breach of the parties' Agreement and the Plaintiff has been damaged.

72. There is a strong likelihood and real probability that Plaintiff will succeed on the merits of his above-mentioned claims.

73. Unless Defendants are restrained and enjoined by this Court from accelerating Plaintiff's mortgage loan and from foreclosing on Plaintiff's property, Plaintiff will suffer immediate, substantial, and irreparable injury.

74. The benefits to Plaintiff in obtaining injunctive relief are equal to or outweigh the potential harm which Defendants would incur if this Court grants the requested injunctive relief.

75. The public interest is best served by granting the injunction.

WHEREFORE, for the foregoing reasons, Plaintiff Christopher Halliday, demands this Honorable Court:

A. Grant Plaintiff a Temporary Restraining Order, restraining and enjoining Defendant Bank of America, N.A. and Defendant BAC Home Loans Servicing, LP from accelerating Plaintiff's mortgage loan;

B. Grant Plaintiff a Temporary Restraining Order, restraining and enjoining Defendant Bank of America, N.A. and Defendant BAC Home Loans Servicing, LP from foreclosing on Plaintiff's property;

C. Grant Plaintiff a Preliminary Injunction restraining and enjoining Defendant Bank of America, N.A. and Defendant BAC Home Loans Servicing, LP from accelerating Plaintiff's mortgage loan;

D. Grant Plaintiff a Preliminary Injunction restraining and enjoining Defendant Bank of America, N.A. and Defendant BAC Home Loans Servicing, LP from foreclosing on Plaintiff's property;

E. Order Defendant Bank of America, N.A. and Defendant BAC Home Loans Servicing, LP to pay the costs of this action.

### COUNT VI – Violation of the Real Estate Settlement Procedures Act (RESPA)
### 12 U.S.C.A. § 2605

76. Plaintiff adopts by reference the allegations contained in paragraphs one (1) through seventy-five (75) of this Complaint as if fully set forth herein.

77. Defendants are by definition "servicers" under the Real Estate Settlement Procedures Act pursuant to 12 U.S.C.A. § 2605 (i)(2).

78. 12 U.S.C.A. § 2605 (e)(1) provides Defendants' duty to respond to borrower inquiries regarding their loan:

> If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, *the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days* (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.
>
> (Emphasis supplied).

79. Pursuant to 12 U.S.C.A § 2605 (e)(1)(B), a "qualified written request" is defined as a

> . . . written correspondence . . . that – (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

80. 12 U.S.C.A. § 2605 (e)(2) describes Defendants' duties after it receives the written inquiry from the borrower:

> *Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request* . . . before taking any action with respect to the inquiry of the borrower, the servicer shall—
>
> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
>
> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes – (i) information requested by the borrower or an explanation of why the information requests is unavailable . . . ; and (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

(Emphasis supplied).

81.   Pursuant to 12 U.S.C.A. § 2605(e)(3), during the 60 day period starting on the date of receipt of the borrower's qualified written request, Defendants may not provide information to consumer reporting agencies regarding any overdue payments.

82.   On or about March 31, 2010[3], Plaintiff's former counsel Matthew Abbasi sent a qualified written request to Defendants, detailing his efforts in contacting and speaking with Defendants, regarding the parties' Agreement and his requests for Defendants to correct Plaintiff's account to reflect the modified loan.  See **Exhibit 3**.

83.   Accordingly, Defendants had until April 21, 2010 in which to acknowledge the receipt of the letter from Mr. Abbasi.  Defendants breached their duty to Plaintiff and failed to provide the acknowledgment pursuant to 12 U.S.C.A. § 2605 (e)(1)(A).

84.   After the receipt of Mr. Abbasi's inquiry, Defendants had until June 1, 2010 in which conduct its investigation and provide Plaintiff with a written explanation of the information of their findings regarding Plaintiff's loan.  Defendants breached their duty to Plaintiff and failed to provide the written explanation pursuant to 12 U.S.C.A. § 2605 (e)(2).

85.   In violation of 12 U.S.C.A. § 2605 (e)(3), Defendants also provided to consumer reporting agencies information regarding Plaintiff's alleged overdue payments under his loan. As a result, Plaintiff's credit has been negatively and detrimentally affected.

---

[3] According to the fax cover sheet, the letter was faxed to Defendants on April 2, 2010.  See Exhibit 3.

86. Despite its violations of RESPA, on or about June 16, 2010, Defendants sent Plaintiff a form letter informing him of its intention to accelerate Plaintiff's mortgage and foreclose on his property. See **Exhibit 8**.

87. As a direct and proximate result of Defendants' violations of RESPA, Plaintiff has been damaged in the amount of $40,000.00, plus additional amounts to be determined at trial, including additional deficiencies, late payment fees, interest, costs, and attorney's fees.

WHEREFORE, for the foregoing reasons, Plaintiff Christopher Halliday, demands the following:

A. Judgment against Defendant Bank of America, N.A., and Defendant BAC Home Loans Servicing, LP, jointly and severally, in the amount of $40,000.00, plus additional amounts to be determined at trial, including additional deficiencies, late payment fees, interest, costs and attorney's fees;

B. Such other and further relief as this Court deems fair and just.

I SOLEMNLY AFFIRM UNDER THE PENALTIES OF PERJURY THAT THE CONTENTS OF THE FOREGOING VERIFIED COMPLAINT ARE TRUE TO THE BEST OF MY KNOWLEDGE, INFORMATION, AND BELIEF.

_____
Christopher Halliday

Subscribed and sworn to me this 25th day of June, 2010.

_____
Notary Public

ANGELA C. CONNERAN
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires August 1, 2012

My Commission Expires: _____

Respectfully Submitted,

HECHT & ASSOCIATES, LLC

Spencer M. Hecht
Jennifer M. Valinski
801 Wayne Avenue
Suite 400
Silver Spring, Maryland 20910
P: 301-587-2099
F: 301-587-2044
Counsel for Plaintiff

## REQUEST FOR IMMEDIATE HEARING

The Plaintiff, by and through undersigned counsel, hereby requests an immediate hearing before the civil duty judge in the Circuit Court for Montgomery County, Maryland on the injunctive relief sought herein.

Spencer M. Hecht

## CERTIFICATION PURSUANT TO MARYLAND RULE 1-351(b)

I HEREBY CERTIFY that pursuant to Maryland Rule 1-351(b), undersigned counsel provided notice to the Defendants legal department via facsimile and telephone on Monday, June 28, 2010 of the Plaintiff's intent to present the foregoing Verified Complaint, Affidavit, and Motion for Temporary Restraining Order to the civil duty judge in the Circuit Court for Montgomery County, Maryland at 1:30 p.m.

Spencer M. Hecht

## JURY TRIAL DEMAND

The Plaintiff by and through undersigned counsel, respectfully demands a jury trial on all issues and causes of action contained herein.

Spencer M. Hecht

# EXHIBIT 1

09-09-09;12:22PM;                                                    ;                    #  8/ 14


**Bankof America**
Home Loans

Attn: Home Retention Division
BAC Home Loans Servicing, LP
100 Beecham Drive Suite 104
Pittsburgh, PA 15205

Notice Date:  August 29, 2009
Account No.: 141277930

CHRISTOPHER B HALLIDAY
1741 Johnson Ave NW Apt 302
Washington, DC 20009

Property Address:
1010 Main St
Gaithersburg, MD 20878

---

[IMPORTANT MESSAGE ABOUT YOUR LOAN

Dear CHRISTOPHER B HALLIDAY,

You are eligible[1] for a program which provides a variety of options to help, including:

- Possible 5 year interest rate freeze and/or reduction
- Interest-only payments for a ten (10) year period
- Elimination of the negative amortization feature on your loan (To understand negative amortization; please see the important terms in this document)
- Assistance with past due amounts

In order to take advantage of the options above, you must agree to the enclosed modification agreement and return it to us as indicated below.

The enclosed modification agreement fixes your interest rate at 2.375%, and result in a new monthly payment amount of $1,551.50.[2]  This rate will take effect on 1st day of October, 2009 and will be fixed for a period of five years.  At the end of that period and each year after, your interest rate may increase.

---

[1] Your eligibility is based upon information you provided to us and may be subject to validation
[2] This payment is subject to change if your escrow payment changes

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.



5078 08/09

**TO ACCEPT THE ENCLOSED MODIFICATION, HERE'S WHAT YOU NEED TO DO:**

1. Carefully review all documentation enclosed. We have outlined important legal terms and notices of this change on the following pages. It is very important that you read and understand these terms.

2. Sign and date the enclosed modification document in the presence of a notary.[3] The notary acknowledgment must be in recordable form. All parties who own an interest in the property must sign the modification agreement as their name appears on the enclosed agreement.

3. Return the signed documents to us in the pre-paid FedEx envelope no later than September 28, 2009 in order for the enclosed modification to take effect. Be sure to use the address label provided

If you have any questions about this program, please contact us at 1.877.759.4102  Our dedicated Loan Consultants can be reached from 8:00 AM until 9:00 PM CT Monday through Friday, and 8:00 AM until 3:00 PM CT on Saturday.  You can also learn more about our Homeownership Retention Program by visiting us online at www.bankofamerica.com/owmain.

We are committed to providing you the help you need to remain in your home.  Please take advantage of this offer by completing the enclosed forms, or call us to see how we can help you.

Sincerely,

Jill Balentine
Senior Vice President
Home Retention Division

BAC Home Loans Servicing, LP

---

[3] If this document is being executed in California, you must use the California All Purpose Acknowledgment. It will be utilized by a notary of the state of California in place of the notary section contained in the Loan Modification Agreement.

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.



8078 08/09

## IMPORTANT TERMS

If you agree to the terms of the enclosed modification and return it as indicated, the interest rate reduction being offered will take effect on October 1, 2009 and will continue until September 30, 2014 which means your new lower payment will be reflected in the following month's statement. As explained above, your payment is subject to change annually subject to the terms of the enclosed modification. After the ten-year period, you will be required to make principal and interest payments for the remaining term of the loan.

This modification will eliminate the negative amortization feature of your loan. Negative amortization previously occurred when the minimum payment option, which is less than the total amount of interest due each month, was chosen. The additional interest owed each month was added to the unpaid principal balance of the loan. By eliminating the minimum (or less than interest only) payment option, we are also eliminating the negative amortization feature of your loan. This may cause a payment increase to the amount, which is due each month. By signing and returning the documents to us you are acknowledging your acceptance and understanding of the terms of the modification

While, during the interest-only period, you are not required to make payments of principal, we nevertheless encourage you to remit more when possible to reduce the likelihood of a significant payment increase at the end of ten years. Please see the additional Payment Choices in your interest-only monthly statement for ways to help you pay down principal. Paying down principal now will help to reduce the amount of interest you currently owe reducing your new interest-Only payment, and will reduce your new monthly payment of principal and interest that will be due at the end of the Interest-Only period.

The following figures show your delinquent balance as of August 29, 2009. The total amount and breakdown of delinquent amounts that would be added to your loan under the terms of the enclosed modification are as follows:

| | |
|---|---|
| Interest: | $16,274.75 |
| Fees*: | $0.00 |
| Escrow: | $7,830.86 |
| Total: | $24,105.61 |

*      Fees may include but are not limited to property inspection fees, property preservation fees, legal fees, appraisal fees, BPO fees, title report fees, recording fees and/or subordination fees.

You are still required to pay back the entire unpaid principal by your loan's maturity date.

BAC Home Loans Servicing, LP is required by law to inform you that this communication is from a debt collector

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.



E078 08/09

## RATE CHANGE NOTICE

**IMPORTANT MESSAGE ABOUT YOUR LOAN**

Your loan is being converted from a Pay Option ARM loan to a Step Rate loan which is effective with your November 1, 2009 payment.

**HOW WE CALCULATE YOUR NEW MONTHLY PAYMENT**

### Step 1: Determine your new interest rate

|  | Current | New |
|---|---|---|
| Loan Index | N/A | N/A* |
| Margin | N/A | N/A |
| Total | N/A | N/A |
| Rounding | N/A | N/A |
| Actual Rate | 5.875% | 2.375% |

* N/A: The new rate is an agreed to interest rate and is not based on an index and margin.

### Step 2: Determine new payment amount

We calculate the new monthly payment amount using the figures below:

| | |
|---|---|
| New Interest Rate | 2.375% |
| Anticipated Principal Balance[4] | $576,600.07 |
| Remaining Term as of October 1, 2009 | 322 months |
| New Interest payment | $1,141.19 |
| New Payment Effective | November 1, 2009 |

If you have an escrow account, this notice does not address any changes to your escrow payment. Please refer to your monthly statement for information regarding your current escrow payment. Furthermore, your interest rate will adjust in accordance with the enclosed modification until it reaches the maximum rate of 5.875%, and this will cause your payment to change as demonstrated in the modification

We are also required to provide you with all other interest rates applied to the transaction in the period between the current and the last adjustment notices.

| Change Date | Interest Rate % |
|---|---|
| October 1, 2008 | 6.750% |
| November 1, 2008 | 6.750% |
| December 1, 2008 | 6.750% |
| January 1, 2009 | 7.125% |
| February 1, 2009 | 7.125% |
| March 1, 2009 | 6.750% |
| April 1, 2009 | 6.500% |
| May 1, 2009 | 6.000% |
| June 1, 2009 | 5.625% |
| July 1, 2009 | 5.375% |
| August 1, 2009 | 5.875% |

---

[4] Anticipated Principal Balance is the unpaid principal that you are expected to owe as of the first payment due under the enclosed modification agreement.

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.



6078 06/09

RECORDING REQUESTED BY:
BAC Home Loans Servicing, LP
Attn: Home Retention Division
7105 Corporate Drive
(PTX-B-36)
Plano, TX 75024

Doc ID #: 000141277930 MOD

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# LOAN MODIFICATION AGREEMENT
## (5-1 ARM 10 Year IO)

This Loan Modification Agreement ("Agreement"), made this 29th day of August, 2009, between CHRISTOPHER B HALLIDAY (the "Borrower(s)") and BAC Home Loans Servicing, LP (the "Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the 18th day of July, 2006 and (2) the Note and Adjustable Rate Rider secured by the Security Instrument, and (3) any prior agreements or modifications in effect relative to the Note and Security Instrument which covers the real property described in the Security Instrument and defined therein as the 'Property', located at 1010 Main St , Gaithersburg, MD 20878.

The real property described being set forth as follows:

## SAME AS IN SAID SECURITY INSTRUMENT, SEE ATTACHED EXHIBIT A

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note and Security Instrument):

1.  As of the 1st day of October, 2009, the amount payable under the Note and Security Instrument (the "Unpaid Principal Balance") is U.S. $576,600.07, consisting of the amount(s) loaned to the Borrower by the Lender and which may include, but are not limited to, any past due principal payments, interest , fees and/or costs ("Unpaid Amounts") which you agreed are to be capitalized (added to the amount you originally borrowed) as one of the terms of this agreement.

2.  (a) Monthly Payments During the Interest-Only Period, Interest Rate Change Dates, and Payments After the Interest-Only Period Ends:

    (i) Interest:
    The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender. Each date on which Borrower's interest rate could change is called an "Interest Rate Change Date". Interest will be charged on the Unpaid Principal Balance at the yearly rate of 2 375% from the 1st day of October, 2009 to the September 30, 2014. Interest will be charged on the basis of a twelve-month year and a thirty-day month. The new rate of interest will become effective on each Interest Rate Change Date and Borrower will pay the amount of the new monthly payment beginning on the first monthly payment due date after the Interest Rate Change Date until the amount of Borrower's monthly payment changes again  The First Interest Rate Change Date is 1st day of October, 2014 and the adjustable interest rate Borrower will pay may change on that day every twelfth month thereafter. Borrower's new adjustable interest rate will be determined by applying the Margin, Index, and rate change calculation method provided in the Note

    (ii) Payments:
    The date on which Borrower will be required to make a first payment consisting of both principal and interest ("First Principal and Interest Payment Due Date") shall be the first monthly payment due on the 1st day of October, 2019. Until the First Principal and Interest Payment Due Date Borrower promises to make monthly payments of interest (Interest Only Payment) of U.S. $1,551.50 beginning on the 1st day of November, 2009, and continuing thereafter on the same day of each succeeding month (Interest-Only Period). On and after the First Principal and Interest Payment Due Date, and until principal and interest are paid in full, Borrower shall make monthly payments of principal and interest and other charges described in the Note and Security Instrument. If on the 1st day of August, 2036 (the "Maturity Date"), the Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity Date.

    (b.) Impact of this Agreement on the new Interest-Only Payment and on the Amount of Interest Borrower will pay over the life of the loan:

    Borrower understands that by agreeing to add the unpaid past-due payments, including unpaid and deferred interest, fees, and other costs (collectively 'Unpaid Amounts') to the Unpaid Principal Balance, the added Unpaid Amounts accrue interest based on the interest rate in effect .Borrower also understands that this means interest will now accrue on the unpaid interest , and that this would not happen without this Agreement.

    Borrower understands the result of this Agreement is to increase the amount of interest that will be owed over the term of the loan. The Interest-Only payment amount Borrower owes now may therefore be higher unless the interest rate has been lowered. This is because the amount of principal is higher and the interest due is recalculated because it is charged on that higher principal amount

payment. Borrower also understands the need to plan for this increase in the amount of the monthly payment when the Interest-Only Period ends and that at that time Borrower will no longer have the choice of paying only the Interest-Only monthly amount. Borrower understands that the increase in the monthly payment amount at the First Principal and Interest Payment Due Date could be significant and result in a condition referred to as payment shock.

(d.) Understanding the Monthly Statement during the Interest-Only Period

Borrower understands that the Interest-Only Loan Monthly Statement during the Interest-Only Period has added features to offer more than the Interest Only Payment. Although Borrower's Interest-Only loan offers the freedom to pay only the interest portion of the payment due each month for a specified period of time, Borrower also understands he or she has the choice to pay other amounts, which will assist Borrower in paying down the principal balance. If Borrower chooses to pay extra money beyond the Interest-Only payment amount in a given month, Borrower understands this will reduce the principal owed. The next month, the Interest-Only payment amount Borrower owes (assuming there has been no change in the interest rate on Borrower's loan) will be lower. This is because the amount of principal is lower and the interest due is recalculated because it is charged on that lower principal amount. Borrower understands that paying more and reducing principal can mean that Borrower will build equity in the home more quickly. Borrower understands that the Amortized Payment Choice and 15-Year Amortized Payment Choice in the Interest-Only monthly statement provide Borrower with several easy ways each month to select a payment that reduces Borrower's principal.

3.  The Borrower will make such payments at Payment Processing  PO Box 850070  Dallas, TX 75285 or at such other place as the Lender may require.

4.  Nothing in this agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and the Borrower and Lender will be bound by, and comply with, all terms and provisions thereof, as amended by this Agreement.

5.  In consideration of this Modification, Borrower agrees that if any document related to the Security Instrument, Note and/or Modification is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, Borrower(s) will comply with Lender's request to execute, acknowledge, initial and deliver to Lender any documentation Lender deems necessary. If the original promissory note is replaced the Lender hereby indemnifies the Borrower(s) against any loss associated with a demand on the original note. All documents Lender requests of Borrower(s) shall be referred to as "Documents." Borrower agrees to deliver the Documents within ten (10) days after receipt by Borrower(s) of a written request for such replacement.

As evidenced by their signatures below, the Borrower and the Lender agree to the foregoing.

_Christopher Halliday_ (signature)   Dated: 9-9-09

CHRISTOPHER B HALLIDAY

STATE OF _Maryland_

COUNTY OF _Montgomery_

On _Sept. 9, 2009_ before me, _Amy L. Aaron-Gray_ Notary Public, personally appeared _Christopher B. Halliday_

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures (s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_(signature)_

Signature

AMY L. AARON-GRAY
NOTARY
PUBLIC
MONTGOMERY COUNTY, MD

Amy L. Aaron-Gray
NOTARY PUBLIC
Montgomery County
State of Maryland
My Commission Expires
August 31, 2012

BAC Home Loans Servicing, LP

By:                                              Dated:

_____                         _____

STATE OF _____

COUNTY OF_____

On _____ before me, _____Notary Public, personally appeared

_____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signatures (s) on the instrument the person(s), or entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal.


_____
Signature

# EXHIBIT 2

RECORDING REQUESTED BY:
BAC Home Loans Servicing, LP
Attn: Home Retention Division
7105 Corporate Drive
(PTX-B-96)
Plano, TX 75024

Doc ID #: 000141277930 MOD
-----------------------SPACE ABOVE THIS LINE FOR RECORDER'S USE-----------------------

## LOAN MODIFICATION AGREEMENT
### (5-1 ARM 10 Year IO)

This Loan Modification Agreement ("Agreement"), made this 28th day of August, 2009, between CHRISTOPHER B HALLIDAY (the "Borrower(s)") and BAC Home Loans Servicing, LP (the "Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the 18th day of July, 2006 and (2) the Note and Adjustable Rate Rider secured by the Security Instrument, and (3) any prior agreements or modifications in effect relative to the Note and Security Instrument which covers the real property described in the Security Instrument and defined therein as the "Property", located at 1010 Main St., Gaithersburg, MD 20878.

The real property described being set forth as follows:

## SAME AS IN SAID SECURITY INSTRUMENT, SEE ATTACHED EXHIBIT A

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note and Security Instrument):

1. As of the 1st day of October, 2009, the amount payable under the Note and Security Instrument (the "Unpaid Principal Balance") is U.S. $576,600.07, consisting of the amount(s) loaned to the Borrower by the Lender and which may include, but are not limited to, any past due principal payments, interest , fees and/or costs ("Unpaid Amounts") which you agreed are to be capitalized (added to the amount you originally borrowed) as one of the terms of this agreement.

2. (a.) Monthly Payments During the Interest-Only Period, Interest Rate Change Dates, and Payments After the Interest-Only Period Ends:

   (i) Interest:
   The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender. Each date on which Borrower's interest rate could change is called an "Interest Rate Change Date". Interest will be charged on the Unpaid Principal Balance at the yearly rate of 2.375% from the 1st day of October, 2009 to the September 30, 2014. Interest will be charged on the basis of a twelve-month year and a thirty-day month. The new rate of interest will become effective on each Interest Rate Change Date and Borrower will pay the amount of the new monthly payment beginning on the first monthly payment due date after the Interest Rate Change Date until the amount of Borrower's monthly payment changes again. The First Interest Rate Change Date is 1st day of October, 2014 and the adjustable interest rate Borrower will pay may change on that day every twelfth month thereafter. Borrower's new adjustable interest rate will be determined by applying the Margin, Index, and rate change calculation method provided in the Note.

   (ii) Payments:
   The date on which Borrower will be required to make a first payment consisting of both principal and interest ("First Principal and Interest Payment Due Date") shall be the first monthly payment due on the 1st day of October, 2019. Until the First Principal and Interest Payment Due Date Borrower promises to make monthly payments of interest (Interest Only Payment) of U.S. $1,551.50 beginning on the 1st day of November, 2009, and continuing thereafter on the same day of each succeeding month (Interest-Only Period). On and after the First Principal and Interest Payment Due Date, and until principal and interest are paid in full, Borrower shall make monthly payments of principal and interest and other charges described in the Note and Security Instrument. If on the 1st day of August, 2036 (the "Maturity Date"), the Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity Date.

   (b.) Impact of this Agreement on the new Interest-Only Payment and on the Amount of Interest Borrower will pay over the life of the loan:

   Borrower understands that by agreeing to add the unpaid past-due payments, including unpaid and deferred interest, fees, and other costs (collectively 'Unpaid Amounts') to the Unpaid Principal Balance, the added Unpaid Amounts accrue interest based on the interest rate in effect .Borrower also understands that this means interest will now accrue on the unpaid interest , and that this would not happen without this Agreement.

   Borrower understands the result of this Agreement is to increase the amount of interest that will be owed over the term of the loan. The Interest-Only payment amount Borrower owes now may therefore be higher unless the interest rate has been lowered. This is because the amount of principal is higher and the interest due is recalculated because it is charged on that higher principal amount.

payment. Borrower also understands the need to plan for this increase in the amount of the monthly payment when the Interest-Only Period ends and that at that time Borrower will no longer have the choice of paying only the Interest-Only monthly amount. Borrower understands that the increase in the monthly payment amount at the First Principal and Interest Payment Due Date could be significant and result in a condition referred to as payment shock.

(d.) Understanding the Monthly Statement during the Interest-Only Period

Borrower understands that the Interest-Only Loan Monthly Statement during the Interest-Only Period has added features to offer more than the Interest Only Payment. Although Borrower's Interest-Only loan offers the freedom to pay only the interest portion of the payment due each month for a specified period of time, Borrower also understands he or she has the choice to pay other amounts, which will assist Borrower in paying down the principal balance. If Borrower chooses to pay extra money beyond the Interest-Only payment amount in a given month, Borrower understands this will reduce the principal owed. The next month, the Interest-Only payment amount Borrower owes (assuming there has been no change in the interest rate on Borrower's loan) will be lower. This is because the amount of principal is lower and the interest due is recalculated because it is charged on that lower principal amount. Borrower understands that paying more and reducing principal can also mean that Borrower will build equity in the home more quickly. Borrower understands that the Amortized Payment Choice and 15-Year Amortized Payment Choice in the Interest-Only monthly statement provide Borrower with several easy ways each month to select a payment that reduces Borrower's principal.

3.  The Borrower will make such payments at Payment Processing  PO Box 650070  Dallas, TX 75265 or at such other place as the Lender may require.

4.  Nothing in this agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and the Borrower and Lender will be bound by, and comply with, all terms and provisions thereof, as amended by this Agreement.

5.  In consideration of this Modification, Borrower agrees that if any document related to the Security Instrument, Note and/or Modification is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, Borrower(s) will comply with Lender's request to execute, acknowledge, initial and deliver to Lender any documentation Lender deems necessary. If the original promissory note is replaced the Lender hereby indemnifies the Borrower(s) against any loss associated with a demand on the original note. All documents Lender requests of Borrower(s) shall be referred to as "Documents." Borrower agrees to deliver the Documents within ten (10) days after receipt by Borrower(s) of a written request for such replacement.

As evidenced by their signatures below, the Borrower and the Lender agree to the foregoing.

_signature_  Dated: 9-9-09

CHRISTOPHER B HALLIDAY


STATE OF _Maryland_

COUNTY OF _Montgomery_

On _Sept 9, 2009_ before me, _Amy L. Aaron-Gray_ Notary Public, personally appeared
_Christopher B. Halliday_

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures (s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_signature_

Signature

_notary seal:_
AMY L. AARON-GRAY
NOTARY
PUBLIC
MONTGOMERY COUNTY, MD

Amy L. Aaron-Gray
NOTARY PUBLIC
Montgomery County
State of Maryland
My Commission Expires
August 31, 2012

BAC Home Loans Servicing, LP

By:                                              Dated:

_____              _____

STATE OF _____

COUNTY OF _____

On _____ before me, _____ Notary Public, personally appeared

_____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures (s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.


Signature _____

# EXHIBIT 3

x  x  x  Memory TX Result Report ( Apr  2  2010 10:45AM ) x  x  x

1)
2)

Date/Time: Apr  2  2010 10:32AM

| File No | Mode | Destination | Pg(s) | Result | Page Not Sent |
|---------|------|-------------|-------|--------|---------------|
| 7561 | Memory TX | 18662616472 | P. 11 | OK | |

---

Reason for error
E 1) Hang up or line fail
E 3) No answer
E 5) Exceeded max. E-mail size

E 2) Busy
E 4) No facsimile connection



Law Offices of
Abbasi & Associates

**FAX**

DATE: 4/2/2010
To: Loss Mitigation- SUPERVISOR
RE: 1010 Main Street Gaithersburg, MD 20878
Fax Number: 866-261-6472

From: Alana Roohey
Phone Number: 806-866-6402
Number of Pages, Including Cover: 11

☐ URGENT   ☐ REPLY ASAP   ☐ PLEASE COMMENT   ☑ PLEASE REVIEW   ☐ FOR YOUR INFORMATION

COMMENTS:

Lender: Bank of America
Loan # 141277830
Borrowers Name: Christopher Halliday
Subject Address: 1010 Main Street Gaithersburg, MD 20878

Attached Please Find:

PLEASE ESCALATE PERM MOD APPROVAL

Thank you.

Alana Roohey

877-398-8202 EXT 218



3255 Cahuenga Blvd West Suite 300 • Los Angeles • CA 90068
Tel: 877.398.8202 • Fax: 323.965.8293



Law Offices of
## Abbasi & Associates

# FAX

DATE: 4/2/2010

| | |
|---|---|
| To: Loss Mitigation- SUPERVISOR | From: Alana Roshay |
| RE: 1010 Main Street Gaithersburg, MD 20878 | Phone Number: 800-669-0102 |
| Fax Number: 866-261-6472 | Number of Pages, Including Cover: 11 |

☐ URGENT  ☐ REPLY ASAP  ☐ PLEASE COMMENT  ☑ PLEASE REVIEW  ☐ FOR YOUR INFORMATION

COMMENTS:

Lender: Bank of America
Loan # 141277930
Borrowers Name:  Christopher Halliday
Subject Address: 1010 Main Street Gaithersburg, MD 20878

Attached Please Find:

PLEASE ESCALATE PERM MOD APPROVAL

Thank you,

Alana Roshay

877-308-8202 EXT 216



# ABBASI & ASSOCIATES

A PROFESSIONAL CORPORATION

**ATTORNEYS AT LAW**
3255 Cahuenga Blvd., West #305
Los Angeles, California 90068

TELEPHONE:
(323) 450-1000

FACSIMILE:
(323) 903-0293

ATTORNEY:
M. MATTHEW ABBASI, ESQ.

March 31, 2010

Bank of America
Attention: Home Retention Division
BAC Home Loan Servicing, LP
Pittsburg, PA 15202

**Firm's Client:    Christopher B. Halliday**
**Property Address: 1010 Main Street, Gaithersburg, MD 20878**
**Loan No.:      141277930**

Attention Loan Servicer:

Please recall that this office represents the above-cited Client with regards to the above-cited loan and property. As you know, we have been retained to help solve our client's home mortgage problems. Please recall that Bank of America has previously agreed to modify my Client's home loan. The modified terms of the home loan are as follow:

Date of Offer:    8/29/09
Terms:        5yr Fixed 10 Interest Only
            Rate 2.375%
Payment:        $1551.50
First payment due: 11/1/10
Execution of Agt:  9/9/2009

Enclosed please find a copy of the executed and notarized loan modification agreement which was sent to Bank America directly as per Bank of America's directions.  Furthermore, my Client has been making payments to Bank of America as per the enclosed agreement. However, despite the aforementioned facts, Bank of America home retention department claims that **this agreement does not exist and that Bank of America never agreed to modify this loan.**

Upon being advised of Bank of America's absurd response, my office contacted Bank of America's home retention department's to discuss this matter further. However, despite numerous attempts we have never received a clear

Page 2
March 31, 2010

response. No one from Bank of America seems capable of explaining the enclosed agreement and Bank of America's failure to abide by its own agreement despite its acceptance of all payments under this agreement. Please note the following communications and none-responses by Bank of America:

**Assistant Supervisor Jenna Verner at ext 9374 (2/26/2010):**

This supervisor emailed the "research department" to look into this matter. She promised to provide a response in 5-7 business days after the research department looks into this matter. *Ms. Verner never responded to this matter and all future attempts to contact her via telephone were rebuffed by the Home Retention Department.*

**Customer Service Employee Jacinda (would not provide last name) at ext 2951 (3/17/2010)**

Jacinda explained that the "research department" is unable to locate any loan modification agreement and that Bank of America does not believe such an agreement was ever offered to the borrower. We obviously voiced our strong objection to such a statement considering we have the agreement in hand and that my client has been making payments under this agreement to Bank of America for months. In order to prove the existence of the agreement, we faxed over to Jacinda the fully executed agreement which is notarized. In the end, Jacinda still refused to acknowledge the existence of the agreement despite our fax but promised to re-open the file and send it for a review for a loan modification offer. We explained that our client does need to be sent for another review as we already have an agreement.

Frankly, I am at a loss as to all of this. I do know that my Client is in great distress over this matter and has asked me to fully investigate this matter. As such, I respectfully request Bank of America's response to the following questions:

1. How could Bank of America deny the very agreement it sent out to my client after it received a copy of the agreement?
2. How could Bank of America accept payments under an agreement it claims never existed?
3. How could Bank of America's "research department" deny the existence of the enclosed document?

In conclusion, please research this matter properly. Please fix whatever internal issues that has caused this obvious error or we will have to move ahead with litigation.

Page 3
March 31, 2010

I look forward to Bank of America's response within the next ten (10) business days. If you have further questions, please do not hesitate to contact us.

Thank you

ABBASI & ASSOCIATES, INC.

MATTHEW ABBASI, Esq.

# EXHIBIT 4



4500 Amon Carter Blvd
Fort Worth, TX 76155

April 23, 2010

**Bank of America** 〰 Home Loans

CHRISTOPHER B HALLIDAY
1010 Main St
Gaithersburg, MD 20878

Loan #: 141277930

Dear CHRISTOPHER B HALLIDAY:

We have reviewed your request for a loan modification under the federal government's Home Affordable Modification Program. We have also considered you for our other loan modification programs. Unfortunately, you are not eligible for a loan modification.

We know this is a difficult time for you and we want to help you avoid the negative consequences of a foreclosure. The next step to help you avoid foreclosure is a short sale or a deed in lieu of foreclosure.

- A short sale. With this program, you agree to sell your home and the proceeds of the sale are used to pay your mortgage debt, even if the proceeds are less than the outstanding balance on your mortgage;

- A deed in lieu of foreclosure. With this program, you transfer the deed to your home to us in full payment of the outstanding balance on your mortgage;

These programs have different requirements and guidelines. Benefits of the programs could include possible relocation assistance payments for borrowers who qualify and potentially less severe impacts to your credit score than with a foreclosure. Please contact us at 1.800.669.6650 to learn more about these programs.

Listed below is the reason you are not eligible for a Home Affordable Modification.

**Trial Plan Default.** You are not eligible for a Home Affordable Modification because you did not make all of the required Trial Period Plan payments by the end of the trial period.

**If you believe you should be eligible for the Home Affordable Modification Program, please call us at 1.800.669.6650.**

We strongly encourage you to continue making the normal monthly payments required under your original loan documents to help avoid foreclosure. Unfortunately, there is no guarantee that making your payments will help you qualify for a program that may resolve your situation, but not making any payments will increase your chance of foreclosure. We want to help you avoid that possibility.

Important Information about foreclosure proceedings

If a foreclosure proceeding or foreclosure sale of your home is currently pending and on hold, that hold will continue and remain in effect while you are considered for other foreclosure avoidance programs, such as a short sale or deed in lieu of foreclosure. However, if we do not hear from you by May 7, 2010, the hold on foreclosure will be released and foreclosure proceedings will resume. We urge you to call us at 1.800.669.6650 prior to May 7, 2010 to discuss these programs.

**We're here to help you**

We want to make sure you are aware of and understand all options available to you. We want to work with you to help you determine what options may be right for your individual situation.

You can also seek assistance at no charge from U.S. Department of Housing and Urban Development-approved housing counselors by calling the HOPE Hotline Number (1.888.995.HOPE). Assistance in understanding this notice is available through the HOPE Hotline by asking for MHA HELP.

Please call us today at 1.800.669.6650 to discuss options that may help you avoid foreclosure.

BAC Home Loans Servicing, LP

# EXHIBIT 5

HECHT & ASSOCIATES

May 10, 2010

<u>Via Facsimile</u>
<u>And U.S. Mail</u>
Bank of America
BAC Home Loan Servicing, LP
100 Beecham Drive, Suite 104
Pittsburg, PA 15202
Attn.: Home Retention Department

      Re:     *Our client: Christopher Halliday*
             *Loan #: 141277930*
             *Address: 1010 Main Street, Gaithersburg, MD 20878*

Dear Sir/Madam:

    As you know, this law firm represents Mr. Christopher Halliday, regarding the above-referenced loan and property. On or about April 23, 2010, Mr. Halliday received a letter from Bank of America wherein it stated that his request for a loan modification under the Home Affordable Modification Program was denied. The reason given for the denial was that Mr. Halliday "did not make all of the required Trial Period Plan payments by the end of the trial period." It further stated that the hold on foreclosure proceedings would cease and foreclosure proceedings resume if Mr. Halliday did not contact Bank of America by May 7, 2010. I am attaching a copy of the April 23, 2010 letter for your review.

    On August 29, 2009, Bank of America previously offered to modify Mr. Halliday's home loan with the following terms and conditions:

| | |
|---|---|
| Terms: | 5 year fixed rate/10 year interest only payment |
| Payment Amount: | $1,551.50/month |
| 1st Payment Due Date: | November 1, 2009 |
| Execution of Agreement: | September 9, 2009 |

    Mr. Halliday accepted this offer on September 9, 2009. Attached please find a copy of the fully executed and notarized Loan Modification Agreement (5-1 Arm 10 Year IO) (hereinafter "Agreement"). Pursuant to the terms of the Agreement, Mr. Halliday began making the required monthly payment of $1,551.50 on November 1, 2009. Shortly thereafter, Bank of America sent Mr. Halliday payment coupons for a $3,500.00 monthly payment, which was the payment offered to Mr. Halliday under the Making Homes Affordable plan; however, this offer was rejected by Mr. Halliday. Mr. Halliday never agreed to this amount and immediately contacted Bank of America. He was informed by Bank of America that it would take some time for the Agreement to be admitted into their computer system and that it would continue to accept his $1,551.50 monthly payment. Despite these statements by Bank of America and its subsequent denial of the existence of the Agreement, it now has threatened to foreclose on the

property for the difference allegedly due and owing between the $3,500.00/month and $1,551.50/month payments.

Accordingly, I am requesting that Bank of America contact me immediately upon its receipt of the attached Agreement, in order to discuss and amicably resolve this dispute. In addition, it is my understanding, per my telephone conversation with Johanna of the Loan Modification Department on Friday that foreclosure proceedings have not begun and will continue to be on hold during the review and research into this dispute. If I am incorrect, please contact me immediately.

I look forward to hearing from Bank of America, and please contact me should you have any questions.

Very Truly Yours,

Jennifer M. Valinski

JMV
Enclosures – as stated.

Cc:    Christopher Halliday (w/o encl.)

**HECHT & ASSOCIATES**
ATTORNEYS AT LAW
801 WAYNE AVENUE, SUITE 400
SILVER SPRING, MARYLAND 20910
301-587-2099
FAX: 301-587-2044
JVALINSKI@HECHTASSOCIATES.COM

---

### FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO: BANK OF AMERICA – CORRESPONDENCE – HOME RETENTION DEPARTMENT | FROM: JENNIFER M. VALINSKI, ESQUIRE |
| FAX NUMBER: (800) 658-0395 | DATE: 05.10.10 |
| PHONE NUMBER: | TOTAL NO. OF PAGES, INCLUDING COVER: 12 |

RE: CHRISTOPHER HALLIDAY; ACCOUNT
# 141277930

☐ URGENT    ☐ FOR REVIEW    ☑ PLEASE COMMENT    ☐ FOR YOUR RECORDS

NOTES/COMMENTS:

DEAR SIR/MADAM:

ATTACHED PLEASE FIND A LETTER REGARDING THE ABOVE REFERENCED ACCOUNT. IF YOU SHOULD HAVE ANY QUESTIONS, PLEASE CONTACT ME IMMEDIATELY. THANK YOU.

JENNIFER M. VALINSKI

THIS FACSIMILE TRANSMITTAL AND ANY ATTACHMENTS MAY CONTAIN INFORMATION THAT IS PRIVILEGED OR CONFIDENTIAL. IF YOU ARE NOT THE INTENDED RECIPIENT, PLEASE NOTE THAT DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS FACSIMILE TRANSMITTAL AND ATTACHMENTS IS STRICTLY

---

## TX REPORT

NAME :HECHT&ASSOCIATES
TEL  :3015872044
DATE :05/10/2010 05:46

| JOB NO. | TYPE | NO. | DESTINATION TEL/ID | DATE | TIME | PAGE | TIME USE | MODE | RESULT |
|---------|------|-----|--------------------|------|------|------|----------|------|--------|
| 3382 | TX | 001 | 18006580395 | 05/10 | 05:44 | 012 | 02'05 | ECM | OK |

# HECHT & ASSOCIATES
### ATTORNEYS AT LAW
801 WAYNE AVENUE, SUITE 400
SILVER SPRING, MARYLAND 20910
301-587-2099
FAX: 301-587-2044
JVALINSKI@HECHTASSOCIATES.COM

---

## FACSIMILE TRANSMITTAL SHEET

---

TO: BANK OF AMERICA –
CORRESPONDENCE – HOME RETENTION
DEPARTMENT

FROM: JENNIFER M. VALINSKI, ESQUIRE

---

FAX NUMBER: (800) 658-0395

DATE: 05.10.10

---

PHONE NUMBER:

TOTAL NO. OF PAGES, INCLUDING COVER: 12

---

RE: CHRISTOPHER HALLIDAY; ACCOUNT
# 141277930

---

☐ URGENT       ☐ FOR REVIEW       ☐ PLEASE COMMENT       ☐ FOR YOUR RECORDS

---

NOTES/COMMENTS:

DEAR SIR/MADAM:

ATTACHED PLEASE FIND A LETTER REGARDING THE ABOVE REFERENCED
ACCOUNT. IF YOU SHOULD HAVE ANY QUESTIONS, PLEASE CONTACT ME
IMMEDIATELY. THANK YOU.

JENNIFER M. VALINSKI

---

THIS FACSIMILE TRANSMITTAL AND ANY ATTACHMENTS MAY CONTAIN
INFORMATION THAT IS PRIVILEGED OR CONFIDENTIAL. IF YOU ARE NOT THE
INTENDED RECIPIENT, PLEASE NOTE THAT DISSEMINATION, DISTRIBUTION, OR
COPYING OF THIS FACSIMILE TRANSMITTAL AND ATTACHMENTS IS STRICTLY
PROHIBITED. IF YOU HAVE RECEIVED THIS IN ERROR, PLEASE CONTACT THE
SENDER LISTED ABOVE IMMEDIATELY.

4500 Amon Carter Blvd
Fort Worth, TX 76155

April 23, 2010

Bank of America ➤ Home Loans

CHRISTOPHER B HALLIDAY
1010 Main St
Gaithersburg, MD 20878

Loan #: 141277930

Dear CHRISTOPHER B HALLIDAY:

We have reviewed your request for a loan modification under the federal government's Home Affordable
Modification Program. We have also considered you for our other loan modification programs.
Unfortunately, you are not eligible for a loan modification.

We know this is a difficult time for you and we want to help you avoid the negative consequences of a
foreclosure. The next step to help you avoid foreclosure is a short sale or a deed in lieu of foreclosure.

- A short sale. With this program, you agree to sell your home and the proceeds of the sale are
  used to pay your mortgage debt, even if the proceeds are less than the outstanding balance on
  your mortgage;

- A deed in lieu of foreclosure. With this program, you transfer the deed to your home to us in full
  payment of the outstanding balance on your mortgage;

These programs have different requirements and guidelines. Benefits of the programs could include
possible relocation assistance payments for borrowers who qualify and potentially less severe impacts to
your credit score than with a foreclosure. Please contact us at 1.800.669.6650 to learn more about these
programs.

Listed below is the reason you are not eligible for a Home Affordable Modification.

**Trial Plan Default.** You are not eligible for a Home Affordable Modification because you did not make all
of the required Trial Period Plan payments by the end of the trial period.

**If you believe you should be eligible for the Home Affordable Modification Program, please call us
at 1.800.669.6650.**

We strongly encourage you to continue making the normal monthly payments required under your original
loan documents to help avoid foreclosure. Unfortunately, there is no guarantee that making your
payments will help you qualify for a program that may resolve your situation, but not making any payments
will increase your chance of foreclosure. We want to help you avoid that possibility.

Important Information about foreclosure proceedings

If a foreclosure proceeding or foreclosure sale of your home is currently pending and on hold, that hold
will continue and remain in effect while you are considered for other foreclosure avoidance programs,
such as a short sale or deed in lieu of foreclosure. However, if we do not hear from you by May 7, 2010,
the hold on foreclosure will be released and foreclosure proceedings will resume. We urge you to call us
at 1.800.669.6650 prior to May 7, 2010 to discuss these programs.

**We're here to help you.**

We want to make sure you are aware of and understand all options available to you. We want to work with you to help you determine what options may be right for your individual situation.

You can also seek assistance at no charge from U.S. Department of Housing and Urban Development-approved housing counselors by calling the HOPE Hotline Number (1.888.995.HOPE). Assistance in understanding this notice is available through the HOPE Hotline by asking for MHA HELP.

Please call us today at 1.800.669.6650 to discuss options that may help you avoid foreclosure.

BAC Home Loans Servicing, LP



**BankofAmerica**

Home Loans

Attn: Home Retention Division
BAC Home Loans Servicing, LP
100 Beecham Drive Suite 104
Pittsburgh, PA 15205

Notice Date:  August 23, 2009
Account No.: 141277930

CHRISTOPHER B HALLIDAY
1741 Johnson Ave NW Apt 302
Washington, DC 20009

Property Address:
1010 Main St
Gaithersburg, MD 20878

---

IMPORTANT MESSAGE ABOUT YOUR LOAN

Dear CHRISTOPHER B HALLIDAY,

You are eligible[1] for a program which provides a variety of options to help, including:

- Possible 5 year interest rate freeze and/or reduction
- Interest-only payments for a ten (10) year period
- Elimination of the negative amortization feature on your loan (To understand negative amortization; please see the important terms in this document)
- Assistance with past due amounts

In order to take advantage of the options above, you must agree to the enclosed modification agreement and return it to us as indicated below.

The enclosed modification agreement fixes your interest rate at 2.375%, and result in a new monthly payment amount of $1,551.50.[2]  This rate will take effect on 1st day of October, 2009 and will be fixed for a period of five years.  At the end of that period and each year after, your interest rate may increase.

---

[1] Your eligibility is based upon information you provided to us and may be subject to validation
[2] This payment is subject to change if your escrow payment changes

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.



6078 08/09

**TO ACCEPT THE ENCLOSED MODIFICATION, HERE'S WHAT YOU NEED TO DO:**

1. Carefully review all documentation enclosed. We have outlined important legal terms and notices of this change on the following pages. It is very important that you read and understand these terms.

2. Sign and date the enclosed modification document in the presence of a notary.[3] The notary acknowledgment must be in recordable form. All parties who own an interest in the property must sign the modification agreement as their name appears on the enclosed agreement.

3. Return the signed documents to us in the pre-paid FedEx envelope no later than September 28, 2009 in order for the enclosed modification to take effect. Be sure to use the address label provided

If you have any questions about this program, please contact us at 1.877.769.4102  Our dedicated Loan Consultants can be reached from 8:00 AM until 9:00 PM CT Monday through Friday, and 8:00 AM until 3:00 PM CT on Saturday.  You can also learn more about our Homeownership Retention Program by visiting us online at www.bankofamerica.com/cwmain.

We are committed to providing you the help you need to remain in your home.  Please take advantage of this offer by completing the enclosed forms, or call us to see how we can help you.

Sincerely,

Jill Balentine
Senior Vice President
Home Retention Division

BAC Home Loans Servicing, LP

---

[3] If this document is being executed in California, you must use the California All Purpose Acknowledgment  It will be utilized by a notary of the state of California in place of the notary section contained in the Loan Modification Agreement.

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.



0078 08/09

## IMPORTANT TERMS

If you agree to the terms of the enclosed modification and return it as indicated, the interest rate reduction being offered will take effect on October 1, 2009 and will continue until September 30, 2014 which means your new lower payment will be reflected in the following month's statement. As explained above, your payment is subject to change annually subject to the terms of the enclosed modification. After the ten-year period, you will be required to make principal and interest payments for the remaining term of the loan.

<u>This modification will eliminate the negative amortization feature of your loan.</u> Negative amortization previously occurred when the minimum payment option, which is less than the total amount of interest due each month, was chosen. The additional interest owed each month was added to the unpaid principal balance of the loan. By eliminating the minimum (or less than interest only) payment option, we are also eliminating the negative amortization feature of your loan. This may cause a payment increase to the amount, which is due each month. By signing and returning the documents to us you are acknowledging your acceptance and understanding of the terms of the modification

While, during the interest-only period, you are not required to make payments of principal, we nevertheless encourage you to remit more when possible to reduce the likelihood of a significant payment increase at the end of ten years. Please see the additional Payment Choices in your interest-only monthly statement for ways to help you pay down principal. Paying down principal now will help to reduce the amount of interest you currently owe reducing your new Interest-Only payment, and will reduce your new monthly payment of principal and interest that will be due at the end of the Interest-Only period.

The following figures show your delinquent balance as of August 29, 2009. The total amount and breakdown of delinquent amounts that would be added to your loan under the terms of the enclosed modification are as follows:

| | |
|---|---|
| Interest: | $16,274.75 |
| Fees*: | $0.00 |
| Escrow: | $7,830.88 |
| Total: | $24,105.61 |

* Fees may include but are not limited to property inspection fees, property preservation fees, legal fees, appraisal fees, BPO fees, title report fees, recording fees and/or subordination fees.

You are still required to pay back the entire unpaid principal by your loan's maturity date.

BAC Home Loans Servicing, LP is required by law to inform you that this communication is from a debt collector

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.



8078 06/09

### RATE CHANGE NOTICE

**IMPORTANT MESSAGE ABOUT YOUR LOAN**

Your loan is being converted from a Pay Option ARM loan to a Step Rate loan which is effective with your November 1, 2009 payment.

**HOW WE CALCULATE YOUR NEW MONTHLY PAYMENT**

### Step 1: Determine your new interest rate

|  | Current | New |
|---|---|---|
| Loan Index | N/A | N/A* |
| Margin | N/A | N/A |
| Total | N/A | N/A |
| Rounding | N/A | N/A |
| Actual Rate | 5.875% | 2.375% |

\* N/A: The new rate is an agreed to interest rate and is not based on an index and margin.

### Step 2: Determine new payment amount

We calculate the new monthly payment amount using the figures below:

| | |
|---|---|
| New Interest Rate | 2.375% |
| Anticipated Principal Balance[+] | $576,600.07 |
| Remaining Term as of October 1, 2009 | 322 months |
| New Interest payment | $1,141.19 |
| New Payment Effective | November 1, 2009 |

If you have an escrow account, this notice does not address any changes to your escrow payment. Please refer to your monthly statement for information regarding your current escrow payment. Furthermore, your interest rate will adjust in accordance with the enclosed modification until it reaches the maximum rate of 5.875%, and this will cause your payment to change as demonstrated in the modification

We are also required to provide you with all other interest rates applied to the transaction in the period between the current and the last adjustment notices.

| Change Date | Interest Rate % |
|---|---|
| October 1, 2008 | 6.750% |
| November 1, 2008 | 6.750% |
| December 1, 2008 | 6.750% |
| January 1, 2009 | 7.125% |
| February 1, 2009 | 7.125% |
| March 1, 2009 | 6.750% |
| April 1, 2009 | 6.500% |
| May 1, 2009 | 6.000% |
| June 1, 2009 | 5.625% |
| July 1, 2009 | 5.375% |
| August 1, 2009 | 5.875% |

---

[+] Anticipated Principal Balance is the unpaid principal that you are expected to owe as of the first payment due under the enclosed modification agreement.

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.



5078 06/09

09-08-09 12:22PM;                                                                                                # 12/ 14

RECORDING REQUESTED BY:
BAC Home Loans Servicing, LP
Attn: Home Retention Division
7105 Corporate Drive
(PTX-B-36)
Plano, TX 75024

Doc ID #; 000141277930 MOD
——————————SPACE ABOVE THIS LINE FOR RECORDER'S USE——————————

# LOAN MODIFICATION AGREEMENT
## (5-1 ARM 10 Year IO)

This Loan Modification Agreement ("Agreement", made this 29th day of August, 2009, between CHRISTOPHER B HALLIDAY (the "Borrower(s)") and BAC Home Loans Servicing, LP (the "Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the 18th day of July, 2008 and (2) the Note and Adjustable Rate Rider secured by the Security Instrument, and (3) any prior agreements or modifications in effect relative to the Note and Security Instrument which covers the real property described in the Security Instrument and defined therein as the "Property", located at 1010 Main St , Gaithersburg, MD 20878.

The real property described being set forth as follows:

SAME AS IN SAID SECURITY INSTRUMENT, SEE ATTACHED EXHIBIT A

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note and Security Instrument):

1.   As of the 1st day of October, 2009, the amount payable under the Note and Security Instrument (the "Unpaid Principal Balance") is U.S. $576,600.07, consisting of the amount(s) loaned to the Borrower by the Lender and which may include, but are not limited to, any past due principal payments, interest , fees and/or costs ("Unpaid Amounts") which you agreed are to be capitalized (added to the amount you originally borrowed) as one of the terms of this agreement.

2.   (a.) Monthly Payments During the Interest-Only Period, Interest Rate Change Dates, and Payments After the Interest-Only Period Ends:

     (i) Interest:
     The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender.  Each date on which Borrower's interest rate could change is called an "Interest Rate Change Date".  Interest will be charged on the Unpaid Principal Balance at the yearly rate of 2.375% from the 1st day of October, 2009 to the September 30, 2014. Interest will be charged on the basis of a twelve-month year and a thirty-day month. The new rate of interest will become effective on each Interest Rate Change Date and Borrower will pay the amount of the new monthly payment beginning on the first monthly payment due date after the Interest Rate Change Date until the amount of Borrower's monthly payment changes again  The First Interest Rate Change Date is 1st day of October, 2014 and the adjustable interest rate Borrower will pay may change on that day every twelfth month thereafter.  Borrower's new adjustable interest rate will be determined by applying the Margin, Index, and rate change calculation method provided in the Note

     (ii) Payments:
     The date on which Borrower will be required to make a first payment consisting of both principal and interest ("First Principal and Interest Payment Due Date") shall be the first monthly payment due on the 1st day of October, 2019. Until the First Principal and Interest Payment Due Date Borrower promises to make monthly payments of interest (Interest Only Payment) of U.S. $1,551.50 beginning on the 1st day of November, 2009, and continuing thereafter on the same day of each succeeding month (Interest-Only Period).  On and after the First Principal and Interest Payment Due Date, and until principal and interest are paid in full, Borrower shall make monthly payments of principal and interest and other charges described in the Note and Security Instrument. If on the 1st day of August, 2038 (the "Maturity Date"), the Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity Date.

     (b.) Impact of this Agreement on the new Interest-Only Payment and on the Amount of Interest Borrower will pay over the life of the loan:

     Borrower understands that by agreeing to add the unpaid past due payments, including unpaid and deferred interest, fees, and other costs (collectively "Unpaid Amounts") to the Unpaid Principal Balance, the added Unpaid Amounts accrue interest based on the interest rate in effect .  Borrower also understands that this means interest will now accrue on the unpaid interest , and that this would not happen without this Agreement

     Borrower understands the result of this Agreement is to increase the amount of interest that will be owed over the term of the loan.  The Interest-Only payment amount Borrower owes now may therefore be higher unless the interest rate has been lowered.  This is because the amount of principal is higher and the interest due is recalculated because it is charged on that higher principal amount.

payment. Borrower also understands the need to plan for this increase in the amount of the monthly payment when the Interest-Only Period ends and that at that time Borrower will no longer have the choice of paying only the Interest-Only monthly amount. Borrower understands that the increase in the monthly payment amount at the First Principal and Interest Payment Due Date could be significant and result in a condition referred to as payment shock.

(d.) Understanding the Monthly Statement during the Interest-Only Period

Borrower understands that the Interest-Only Loan Monthly Statement during the Interest-Only Period has added features to offer more than the Interest Only Payment. Although Borrower's Interest-Only loan offers the freedom to pay only the interest portion of the payment due each month for a specified period of time, Borrower also understands he or she has the choice to pay other amounts, which will assist Borrower in paying down the principal balance. If Borrower chooses to pay extra money beyond the Interest-Only payment amount in a given month, Borrower understands this will reduce the principal owed. The next month, the Interest-Only payment amount Borrower owes (assuming there has been no change in the interest rate on Borrower's loan) will be lower. This is because the amount of principal is lower and the interest due is recalculated because it is charged on that lower principal amount. Borrower understands that paying more and reducing principal can also mean that Borrower will build equity in the home more quickly. Borrower understands that the Amortized Payment Choice and 15-Year Amortized Payment Choice in the Interest-Only monthly statement provide Borrower with several easy ways each month to select a payment that reduces Borrower's principal.

3.   The Borrower will make such payments at Payment Processing  PO Box 650070  Dallas, TX 75265 or at such other place as the Lender may require.

4.   Nothing in this agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and the Borrower and Lender will be bound by, and comply with, all terms and provisions thereof, as amended by this Agreement.

5.   In consideration of this Modification, Borrower agrees that if any document related to the Security Instrument, Note and/or Modification is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, Borrower(s) will comply with Lender's request to execute, acknowledge, initial and deliver to Lender any documentation Lender deems necessary. If the original promissory note is replaced the Lender hereby indemnifies the Borrower(s) against any loss associated with a demand on the original note, All documents Lender requests of Borrower(s) shall be referred to as "Documents." Borrower agrees to deliver the Documents within ten (10) days after receipt by Borrower(s) of a written request for such replacement.

As evidenced by their signatures below, the Borrower and the Lender agree to the foregoing.

_Christopher B Halliday_        Dated:  9-9-09
CHRISTOPHER B HALLIDAY


STATE OF  _Maryland_

COUNTY OF  _Montgomery_

On _Sept. 9, 2009_ before me, _Amy L Aaron-Gray_ Notary Public, personally appeared _Christopher B. Halliday_

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures (s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument

WITNESS my hand and official seal.

_Signature_

(Notary Seal: AMY L. AARON NOTARY PUBLIC MONTGOMERY COUNTY MD)

Amy L. Aaron-Gray
NOTARY PUBLIC
Montgomery County
State of Maryland
My Commission Expires
August 31, 2012

09-09-09:12:22PM

# 14/ 14

BAC Home Loans Servicing, LP

By: _____

Dated: _____

STATE OF _____

COUNTY OF _____

On _____ before me, _____ Notary Public, personally appeared

_____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures (s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Signature

# EXHIBIT 6

HECHT & ASSOCIATES

June 10, 2010

Via Federal Express Delivery
Bank of America
Legal Department
555 California Street
8th Floor
San Francisco, California 94104

Re:    Our client: Christopher Halliday
       Loan Account #: 141277930
       Property Address: 1010 Main Street, Gaithersburg, MD 20878

Dear Sir/Madam:

       As you know, this law firm represents Mr. Christopher Halliday, regarding the above-referenced loan and property. Specifically, our firm has been retained to help resolve our client's home mortgage modification issues with Bank of America. Accordingly, please allow this letter to serve as formal demand for Bank of America to specifically perform its obligations under the September 9, 2009 loan modification agreement with Mr. Halliday, and officially input the Agreement and its terms into the Bank of America system. Additionally, I am making a formal request for all of the recorded conversations between my client Mr. Halliday and Bank of America Representatives regarding his loan from September 2009 through the present. I hope that the information and supporting documentation contained herein, which details all efforts by my client and this firm to try to resolve this issue, will help to amicably resolve this matter.

       On or about August 29, 2009, Bank of America offered to modify the above-referenced loan with the following terms and conditions:

Terms:                     5 year fixed rate/10 year interest only payment
Payment Amount:            $1,551.50/month
1st Payment Due Date:      November 1, 2009
Execution of Agreement:    September 9, 2009

Mr. Halliday accepted this offer on September 9, 2009. I am enclosing for your records a copy of the August 29, 2009 correspondence and fully executed and notarized Loan Modification Agreement (5-1 Arm 10 Year IO) (hereinafter "Agreement") as **Exhibit 1**. Mr. Halliday forwarded the executed Agreement by mail in the envelope provided by Bank of America. Pursuant to the terms of the Agreement, Mr. Halliday began making the required monthly payment of $1,551.50 on November 1, 2009. Shortly thereafter, Bank of America sent Mr. Halliday payment coupons for the $3,631.89 monthly payment, which was the payment offered by Bank of America to Mr. Halliday under the Making Homes Affordable program; however, Mr. Halliday never accepted this offer. He immediately contacted Bank of America that he had accepted the 5 year fixed rate/10 year interest only payment Agreement and mailed it. The

801 Wayne Avenue, Suite 400, Silver Spring, MD 20910
p: (301) 587-2099   f: (301) 587-2044
shecht@hechtassociates.com   www.hechtassociates.com
admitted: Maryland, Virginia & Washington, D.C.

customer service department informed him that it did receive the package, but that it would take some time for the Agreement to be entered into their computer system. They further indicated that it would continue to accept his payment of $1,551.50.

Over the next several months, Mr. Halliday continued to make his required monthly payment of $1,551.50 pursuant to the terms and conditions of the Agreement. However, Bank of America failed to input the Agreement into its system and continued to send Mr. Halliday the payment coupons for $3,500.00 payment which he had rejected. As a result, Mr. Halliday made monthly telephone calls to the customer service department regarding the dispute. Mr. Halliday was informed that Bank of America did receive, and accepted the Agreement; however, it was taking additional time for the Agreement to be entered into their computer system. He was also informed not to worry and to continue making the $1,551.50 monthly payments. Despite Bank of America's representations, it continued to fail to acknowledge the acceptance of the Agreement in its computer system. Sometime thereafter in February/March 2010, Mr. Halliday was informed by Bank of America that it did not have the Agreement and that it did not agree to modify his loan pursuant to the above-mentioned terms and conditions.

Mr. Halliday then hired his former counsel Matthew Abbasi. On or about March 31, 2010, Mr. Abbasi sent a letter to Bank of America's Home Retention Division, which enclosed the Agreement and detailed his efforts in contacting and speaking with Bank of America representatives. I am enclosing a copy of the March 31, 2010 correspondence for your records as **Exhibit 2**. As you can see in the letter, Mr. Abbasi spoke with Assistant Supervisor Jenna Verner on February 26, 2010, who told him that she would contact him in 5-7 business days after the "research department" looked into the matter. Ms. Verner never contacted Mr. Abbasi. Several weeks later, Mr. Abbasi contacted customer service and spoke with Jacinda, who informed him that the "research department" was unable to locate the Agreement and that Bank of America did not believe that such an offer was made to Mr. Halliday. Mr. Abbasi promptly faxed the Agreement to Jacinda who promised to re-open the file and send it for a review for a loan modification offer. Mr. Abbasi explained that it did not need to be sent for a review because the Agreement was already in place. Mr. Abbassi concluded by asking Bank of America to research the matter, and correct the internal issues regarding the error. Bank of America did not contact Mr. Abbassi nor correct the problem.

On or about April 23, 2010, Mr. Halliday received a letter from Bank of America wherein it stated that his request for a loan modification under the Home Affordable Modification Program was denied. I am enclosing a copy of the April 23, 2010 correspondence for your records as **Exhibit 3**. The letter went on to state that the hold on the foreclosure proceedings would cease and foreclosure proceedings would resume if Mr. Halliday did not contact Bank of America by May 7, 2010. Mr. Halliday then subsequently hired this law firm to represent him in this matter. On May 7, 2010, my associate Jennifer Valinski spoke with Johanna in the Loan Modification Department who informed her that foreclosure proceedings had not begun and that the proceedings would continue to be on hold during a review of the dispute. On May 10, 2010, we sent a detailed correspondence to the Home Retention Department, outlining the continued issues and problems posed by Bank of America's refusal to acknowledge and input the Agreement. I am enclosing a copy of the May 10, 2010 correspondence with attachments as **Exhibit 4**. The next day, Ms. Valinski called the Loan Modification Department to confirm the

receipt of the May 10, 2010 correspondence. She spoke with Cora who informed her that as soon as the fax was confirmed as being received, they could then extend the holding period on the foreclosure. Our office did not hear back from Bank of America regarding the May 10, 2010 correspondence.

On May 17, 2010, Ms. Valinski called the Loan Modification Department and spoke with Shawna. Shawna stated that she would send an e-mail to the Management Department putting it on notice of the Agreement and that it had not been processed in the system. Shawna went on to say that the Management Department would then speak with the Closing Department to finalize the loan modification. She also stated that it appeared to be a "human error" as to why the Agreement was not in the system. On May 19, 2010, Ms. Valinski called the Loan Modification Department who confirmed that Shawna did send the e-mail to the Management Department. Several days later on May 24, 2010, Ms. Valinski spoke with Nancy of the Loan Modification Department, who stated that the Management Department still had not responded to Shawna's e-mail. Nancy then sent an e-mail to Shawna regarding any new developments as to why the Agreement was not properly "closed." Ms. Valinski was told to call back in a few days.

On May 28, 2010, Ms. Valinski made two phone calls to the Loan Modification Department. During the first call, she spoke with Eileen who informed her that there were no new updates. Ms. Valinski insisted that she speak with someone in Management; however, Eileen stated that she could not transfer her call but would forward an e-mail directly to Management to call Ms. Valinski directly. Eileen concluded by stating that if Ms. Valinski did not hear from Management by a certain time to call back. After not hearing from Management, Ms. Valinski called the second time and spoke with Christine. Christine contacted the alleged vendor of the loan, the Bank of New York, to inquire whether it received the loan documents. According to Christine, because the Bank of New York did not receive the "original" loan application, the Agreement was not valid and Mr. Halliday's original monthly mortgage amount of $3,631.89 was still in effect. Ms. Valinski voiced a strong objection to this conclusion by stating that Mr. Halliday sent the original Agreement by mail in the envelope provided to him from Bank of America and that through no fault of Mr. Halliday, the original Agreement was lost within the Bank of America system. Christine concluded the conversation that there was nothing more that could be done.

It is clear from the beginning of the investigation that Bank of America acknowledged the existence and acceptance of the Agreement. Accordingly, I am asking that the Legal Department contact me within seven (7) business days of the date of this correspondence to discuss and resolve this ongoing matter. Please be advised that should my firm not hear from the Bank of America Legal Department, my client has authorized us to do all that is necessary to protect his legal interests and immediately file claims for specific performance, breach of contract, negligence, and other viable causes of action against Bank of America for his damages from this dispute.

I look forward to hearing from the Bank of America Legal Department's response.  If you have any questions, please do not hesitate to contact me at the phone number listed below.

Very Truly Yours,

Spencer M. Hecht (JMV)

Spencer M. Hecht

JMV
Enclosures – as stated.
Cc:     Christopher Halliday (w/o encl.)

# EXHIBIT 7



**Bank of America**

**Home Loans**

*Customer Service Department, CA6-919-01-41*
*PO Box 5170*
*Simi Valley, CA 93062-5170*

**Notice Date:**  June 16, 2010

**Account No.:**  141277930

Christopher B. Halliday
1741 Johnson Ave Nw Apt 302
Washington, DC 20009

**Property Address:**
1010 Main St
Gaithersburg, MD 20878

---

### IMPORTANT MESSAGE ABOUT YOUR LOAN

We recently received your request for financial assistance.  We regret to inform you that there
are no available workout options based on the financial information that was provided.

### WHAT YOU NEED TO DO

While we regret that we are unable to assist you currently, if your financial situation changes,
please contact our office with the updated information.  In the meantime, you will be required to
make your monthly payment by the 1st of each month in accordance with your note.

Your loan has a 15 day grace period before late charges are applied.  Failure to maintain timely
payments may affect our ability to assist you in the future so we do encourage you to continue
to make your payments on time.

### THANK YOU FOR YOUR BUSINESS

You are a valued customer at BAC Home Loans Servicing, LP.  It is our continued goal to
provide our customers with the highest level of customer satisfaction.

If you need further assistance, please contact our Home Retention Department directly at 1-
800-669-6650.

This communication is from BAC Home Loans Servicing, LP, a subsidiary of Bank of America, N.A.

WOPKG No Options 11494 05/27/2010

# EXHIBIT 8

**Bank of America**

Home Loans
P.O. Box 660694
Dallas, TX 75266-0694

Business Address:
7105 Corporate Drive
Plano TX 75024

Send Payments to:
P.O. Box 15222
Wilmington, DE 19886-5222

June 16, 2010

Christopher B Halliday
1741 JOHNSON AVE NW APT 302
WASHINGTON, DC 20009-7810

Account No.: 141277930
Property Address:
1010 Main St
Gaithersburg, MD 20878

### NOTICE OF INTENT TO ACCELERATE

Dear Christopher B Halliday:

BAC Home Loans Servicing, LP (hereinafter "BAC Home Loans Servicing, LP") services the home loan described above on behalf of the holder of the promissory note (the "Noteholder"). The loan is in serious default because the required payments have not been made. The total amount now required to reinstate the loan as of the date of this notice is as follows:

| Monthly Charges: | 08/01/2009 | $2,536.43 |
| | 09/01/2009 | $2,695.89 |
| | 10/01/2009 | $32,687.91 |
| Late Charges: | 08/01/2009 | $106.31 |
| | 09/01/2009 | $1,028.52 |
| Other Charges: | Total Late Charges: | $212.62 |
| | Uncollected Costs: | ($5,590.60) |
| | Partial Payment Balance: | ($566.57) |
| | **TOTAL DUE:** | **$33,110.51** |

You have the right to cure the default. To cure the default, on or before July 16, 2010, BAC Home Loans Servicing, LP must receive the amount of $33,110.51 plus any additional regular monthly payment or payments, late charges, fees and charges which become due on or before July 16, 2010.

The default will not be considered cured unless BAC Home Loans Servicing, LP receives "good funds" in the amount of $33,110.51 on or before July 16, 2010. If any check (or other payment) is returned to us for insufficient funds or for any other reason, "good funds" will not have been received and the default will not have been cured. No extension of time to cure will be granted due to a returned payment. BAC Home Loans Servicing, LP reserves the right to accept or reject a partial payment of the total amount due without waiving any of its rights herein or otherwise. For example, if less than the full amount that is due is sent to us, we can keep the payment and apply it to the debt but still proceed to foreclosure since the default would not have been cured.

If the default is not cured on or before July 16, 2010, the mortgage payments will be accelerated with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at that time. As such, the failure to cure the default may result in the foreclosure and sale of your property. If your property is foreclosed upon, the Noteholder may pursue a deficiency judgment against you to collect the balance of your loan, if permitted by law.

You may, if required by law or your loan documents, have the right to cure the default after the acceleration of the mortgage payments and prior to the foreclosure sale of your property if all amounts past due are paid within the time permitted by law. However, BAC Home Loans Servicing, LP and the Noteholder shall be entitled to collect all fees and costs incurred by BAC Home Loans Servicing, LP and the Noteholder in pursuing any of their remedies, including but not limited to reasonable attorney's fees, to the full extent permitted by law. Further, you may have the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and foreclosure.

Your loan is in default. Pursuant to your loan documents, BAC Home Loans Servicing, LP may, enter upon and conduct an inspection of your property. The purposes of such an inspection are to (i) observe the physical condition of your property, (ii) verify that the property is occupied and/or (iii) determine the identity of the occupant. If you do not cure the default prior to the inspection, other actions to protect the mortgagee's interest in the property (including, but not limited to, winterization, securing the property, and valuation services) may be taken. The costs of the above-described inspections and property preservation efforts will be charged to your account as provided in your security instrument and as permitted by law.

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.

---

Please write your account number on all checks and correspondence.
We may charge you a fee for any payment returned or rejected by your financial institution, subject to applicable law.

BLQNSENV 8795 12/11/2008

Payment Instructions:
- Make your check payable to BAC Home Loans Servicing, LP
- Don't send cash
- Please include coupon with your payment

For all full month payment periods, interest is calculated on a monthly basis. Accordingly, interest for all full months, including February, is calculated as 30/360 of annual interest, irrespective of the actual number of days in the month. For partial months, interest is calculated daily on the basis of a 365 day year.

Account Number: 141277930-6
Christopher B Halliday
1010 Main St
Gaithersburg, MD 20878

Balance Due for charges listed above: $33,110.51 as of June 16, 2010.
Please update e-mail information on the reverse side of this coupon.

BLQNSENV

| | |
| --- | --- |
| Additional Principal | |
| Additional Escrow | |
| Check Total | |

BAC Home Loans Servicing, LP
PO BOX 15222
Wilmington, DE 19886-5222

141277930600003311051003311051

⑆586590058⑆141277930⑈

IC068  04-2009  (Former 8533I)

If you are unable to cure the default on or before July 16, 2010, BAC Home Loans Servicing, LP wants you to be aware of various options that may be available to you through BAC Home Loans Servicing, LP to prevent a foreclosure sale of your property. For example:

- **Repayment Plan:** It is possible that you may be eligible for some form of payment assistance through BAC Home Loans Servicing, LP. Our basic plan requires that BAC Home Loans Servicing, LP receive, up front, at least ½ of the amount necessary to bring the account current, and that the balance of the overdue amount be paid, along with the regular monthly payment, over a defined period of time. Other repayment plans also are available.

- **Loan Modification:** Or, it is possible that the regular monthly payments can be lowered through a modification of the loan by reducing the interest rate and then adding the delinquent payments to the current loan balance. This foreclosure alternative, however, is limited to certain loan types.

- **Sale of Your Property:** Or, if you are willing to sell your home in order to avoid foreclosure, it is possible that the sale of your home can be approved through BAC Home Loans Servicing, LP even if your home is worth less than what is owed on it.

- **Deed-In-Lieu:** Or, if your property is free from other liens or encumbrances, and if the default is due to a serious financial hardship which is beyond your control, you may be eligible to deed your property directly to the Noteholder and avoid the foreclosure sale.

If you are interested in discussing any of these foreclosure alternatives with BAC Home Loans Servicing, LP, you must contact us immediately. If you request assistance, BAC Home Loans Servicing, LP will need to evaluate whether that assistance will be extended to you. In the meantime, BAC Home Loans Servicing, LP will pursue all of its rights and remedies under the loan documents and as permitted by law, unless it agrees otherwise in writing. Failure to bring your loan current or to enter into a written agreement by July 16, 2010 as outlined above will result in the acceleration of your debt.

Additionally, the U.S. Department of Housing and Urban Development (HUD) funds free or very low cost housing counseling across the nation. Housing counselors can help you understand the law and your options. They can also help you to organize your finances and represent you in negotiations with your lender if you need this assistance. You may find a HUD-approved housing counselor near you by calling 1-800-569-4287. For the hearing impaired, HUD Counseling Agency (TDD) numbers are available at 1-800-877-8339.

Time is of the essence. Should you have any questions concerning this notice, please contact Loan Counseling Center immediately at 1-800-669-6654. Our office hours are between Mon - Fri, 8am to 9pm Eastern Time.

Sincerely,

Loan Counseling Center

---

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.

E-mail use: Providing your e-mail address below will allow us to send you information on your account.
Account Number: 141277830
Christopher B Halliday E-mail address:

How we post your payments: All accepted payments of principal and interest will be applied to the longest outstanding installment due, unless otherwise expressly prohibited or limited by law. If you submit an amount in addition to your scheduled monthly amount, we will apply your payments as follows: (i) to outstanding monthly payments of principal and interest, (ii) escrow deficiencies, (iii) late charges and other amounts you owe in connection with your loan and (iv) to reduce the outstanding principal balance of your loan. Please specify if you want an additional amount applied to future payments, rather than principal reduction.

Postdated checks: Postdated checks will be processed on the date received unless a loan counselor agrees to honor the date written on the check as a condition of a repayment plan.



$10.00

US POSTAGE
02 1P
0002941883 JUN 29 2010
MAILED FROM ZIP CODE 20910

CERTIFIED MAIL

7009 2820 0002 2321 4383

HECHT & ASSOCIATES
801 Wayne Avenue, Suite 400
Silver Spring, MD 20910

Certified Mail Return Receipt Requested
The Corporation Trust, Inc.
351 West Camden Street
Baltimore, Maryland  21201